IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE MITCHELL, | ) | CASE NO. 4:09 CV 2845 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| BENNIE KELLY, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts and Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    Underlying facts/trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
          1.    Facts of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
          2.    Trial and sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
    B.    Direct appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
          1.    Ohio State Appeals Court . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
          2.    Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
    C.    Federal habeas claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    A.    Preliminary issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
          1.    Exhaustion/fair presentment/de novo review . . . . . . . . . . . . . . . -15-
          2.    Standard of review – fairly presented federal claims for relief not
              adjudicated by state court . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
          3.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
          4.    AEDPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
              a.    The standards for federal habeas review . . . . . . . . . . . . -19-
          5.    Ineffective assistance of counsel . . . . . . . . . . . . . . . . . . . . . . . -21-
    C.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
          1.    Ground one – the claim of improper admission of evidence – should
              be dismissed as waived/procedurally defaulted. . . . . . . . . . . . . . -24-
          2.    Ground two – the claim of improper inquiry into bias of a juror –
              should be denied on the merits after de novo review. . . . . . . . . -29-

3.     Ground three – the claim that testimonial hearsay was permitted when the coroner who did not prepare the autopsy  was permitted to testify as to the autopsy results – should be denied on the merits inasmuch as the state court decision denying this claim was not an unreasonable application of clearly established federal law. . . .  -34-

4.     Ground four – a claim of ineffective assistance of counsel – should be denied, since the decision of the state appeals court was not an unreasonable application of the clearly established federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -39-

a.     Opinion testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -42-

b.     Failure to participate in voir dire . . . . . . . . . . . . . . . . . .  -42-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -45-

## Introduction

Before me by referral[1] is the petition of Shane Mitchell for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Mitchell is currently incarcerated at the Trumbull Correctional Institution, where he is serving a life sentence imposed by the Columbiana[3] County Common Pleas Court.[4]  The sentence was imposed in September 2005 after a jury found Mitchell guilty of one count of murder, one count of aggravated robbery, and one count of tampering with evidence.[5]

_____

[1] ECF # 4.

[2] ECF # 1.

[3] *Id.* at 1.  Petitioner lists Trumbull County Common Pleas Court under question 1(a) of his petition.  However, in the Appendix on page 17 of his petition, Section I. Jurisdictional Overview, reference is made to the Columbiana County grand jury.

[4] *Id.* at 1.

[5] *Id.*

-2-

In his petition, Mitchell raises four grounds for relief,[6] which the State argues are without merit.[7]  For the reasons that follow, I recommend finding that the State's positions are well taken and that the petition should be dismissed in part and denied in part.

## Facts and Course of Proceedings

**A.     Underlying facts/trial**

*1.     Facts of the case*

The Ohio appellate court found[8] the following facts.[9]

On a December night in 2004, Shane Mitchell went to the Side Door Tavern in Salem, Ohio.[10]  At this tavern, Mitchell devised a scheme whereby he would play an intermediary in a cocaine deal only to steal the money of the would-be buyer.[11]  Mitchell enlisted Richard Forrester to assist him in this scheme.[12]  After a young woman expressed interest in purchasing cocaine, Mitchell demanded payment up front; Bradley Van Horn intervened in

---

[6] *Id.* at 5.

[7] ECF # 10 at 154-62.

[8] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[9] ECF # 9 (state court record, Attachment 1).

[10] *Id.* at 19.

[11] *Id.*

[12] *Id.*

-3-

the discussion.[13]  Van Horn, Mitchell, Forrester, and A. J. Coffman (Mitchell's cousin) left the tavern and drove to a church.[14]  Coffman stayed in the car while the other three walked behind the church.[15]  Mitchell and Forrester proceeded to assault Van Horn, repeatedly punching and kicking him in the head and upper body.[16]

The next day, Mitchell voluntarily turned himself over to police and waived his Miranda rights.[17]  In police interviews, Mitchell maintained that he never struck the victim and that his intention was only to trick the victim out of money.[18]  Furthermore, Mitchell pinned the assault of the victim on Forrester; asserting that Forrester kicked and punched Van Horn, and that blood sprayed on his (Mitchell's) clothing as a result of Forrester's attack.[19]  Mitchell admitted to burning the clothing he had on that night upon learning of Van Horn's death.[20]

---

[13] *Id.*

[14] *Id.* at 21.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 22.

[18] *Id.*

[19] *Id.*

[20] *Id.*

2.      *Trial and sentence*

Mitchell was charged in the Columbiana Municipal Court on counts of murder, aggravated robbery, and tampering with evidence.[21]  Mitchell entered a plea of not guilty on all counts.[22]

Early in the trial before the Columbiana County Court of Common Pleas, a female juror, Sandra Reynolds, reported having had prior contact with the mother of A. J. Coffman.[23] During the trial, Coffman and his father testified for the State.[24]  The defense agreed to continue with proceedings but declared that the issue would have to be examined.[25]  The court determined, after questioning juror Reynolds, that her brief acquaintance with Mrs. Coffman would in no way prohibit her from returning a fair verdict.[26]  Although Mitchell's attorney did not participate in the examination of juror Reynolds, he did not object to the court's determination.[27]

---

[21] *Id.* at 24.

[22] *Id.*

[23] *Id.* at 25.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 26.

[27] *Id.*

During the trial, two police investigators testified that Mitchell's statements did not match the evidence of the crime.[28] The court allowed this testimony over objection.[29]

Dr. William Graham, coroner for Columbiana County, did not perform or attend the autopsy of Bradley Van Horn.[30] Dr. Stan Seligman, a pathologist with the Cuyahoga County Coroner's Office, performed the autopsy. Dr. Graham copied Dr. Seligman's cause of death on Van Horn's death certificate.[31] Dr. Graham testified as to the cause of death and read excerpts from Dr. Seligman's pathology report; Dr. Seligman did not testify during the trial.[32]

Mitchell requested a jury instruction on the lesser included offense of involuntary manslaughter.[33] This court rejected this request.[34]

The jury found Mitchell guilty of all counts, and the court sentenced Mitchell to serve 24 years to life.[35]

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at 23.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 27.

**B.**     **Direct appeals**

*1.*     ***Ohio State Appeals Court***

Following his conviction, Mitchell appealed to the Seventh District Court of Appeals,

Columbiana County.[36]  In his appeal, Mitchell raised six assignments of error.[37]

Assignment of Error 1:  The trial court erred in admitting into evidence irrelevant and improper evidence prejudicial to the Defendant/Appellant in the form of opinion evidence as to the Defendant/Appellant's credibility and a photograph of the decedent's minor child, which had no evidentiary value.[38]

Assignment of Error 2:  The trial court erred in failing to conduct a fair, complete and thorough inquiry regarding juror Reynolds' contact with Mrs. Coffman and by conducting its limited in-camera inquiry outside the presence of the Defendant/Appellant.[39]

Assignment of Error 3:  The trial court erred in summoning talesmen without issuing a venire to the Sheriff as required by R.C. 2313.39, without a return of venire having been filed by the Sheriff and without safeguards to insure that the talesman were fairly, randomly and impartially selected.[40]

Assignment of Error 4:  The trial court erred in admitting State's exhibit 40, the report of autopsy of Dr. Stan F. Seligman, and in permitting the Columbiana coroner, Dr. Graham, to testify as to the report of autopsy because the report constitutes testimony hearsay prohibited by *Crawford v. Washington* (204) [sic].[41]

---

[36] *Id.* at 8.

[37] *Id.* at 33.

[38] *Id.* at 28.

[39] *Id.* at 31.

[40] *Id.* at 34.

[41] *Id.* at 37.

-7-

Assignment of Error 5:  The trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter.[42]

Assignment of Error 6:  The Defendant/Appellant was deprived of his constitutional right to the effective assistance of counsel by counsel's failure to participate in the in-camera voir dire of juror Sandra Reynolds.[43]

The State filed an opposition brief, and the appeals court upheld the conviction.[44]  The appeals court ruled that the inclusion of a photograph of Van Horn's child was essential in identifying stolen property.[45]  Additionally, the appeals court concluded that Mitchell opened the door for the statements of police investigators about his credibility when the defense made several inquiries about the consistency of Mitchell's statements with evidence at the scene of the crime.[46]

Further, the court held that the trial court had properly investigated the incidental contact of juror Reynolds to Mrs. Coffman, neither party raised any objection to the procedure at the time,[47] and Mitchell had waived any right to be present during this inquiry of Reynolds.[48]

---

[42] *Id.* at 39.

[43] *Id.* at 41.

[44] *Id.* at 68.

[45] *Id.* at 53.  Assignment of Error 1.

[46] *Id.*  Assignment of Error 1.

[47] *Id.* at 56.

[48] *Id.*  Assignment of Error 2.

The court ruled that the summoning of talesmen was lawful, and both parties had the opportunity to voir dire the talesmen.[49]

The court also found that Mitchell's assignment of error as to the autopsy report and the coroner's testimony lacked merit.[50]  By law, a coroner determines the causes of deaths within his county.[51]  To determine these causes of deaths, a coroner may investigate numerous documents, including autopsy reports; since these autopsy reports are public record and since the Ohio Supreme Court has ruled several times that these records are admissible, the testimony of Dr. Graham does not constitute testimonial hearsay barred by *Crawford v. Washington*.[52]

As to Mitchell's request for an involuntary manslaughter instruction, the court ruled that the instruction of a lesser offense is only required when the offense fits the crime.[53]  In this case, the evidence clearly shows intent of the violent crimes of aggravated robbery and felonious assault; involuntary manslaughter is not consistent with the evidence of the case and Mitchell's own testimony.[54]

---

[49] *Id.* at 59.  Assignment of Error 3.

[50] *Id.* at 63.  Assignment of Error 4.

[51] *Id.*

[52] *Id.*; *Crawford v. Washington*, 541 U.S. 36 (2004).

[53] ECF # 9, Attachment at 66.  Assignment of Error 5.

[54] *Id.*

Finally, the court ruled that, because Mitchell had waived his rights to be present at the voir dire of juror Reynolds, he could not argue ineffective assistance of counsel without proving a prejudice and showing that the verdict would have been different had he been at the voir dire or excused juror Reynolds.[55]  The evidence and circumstances of the trial did not support either of these arguments.  Hence, Mitchell's ineffective counsel argument was also without merit.[56]

Having rejected all of Mitchell's assignments of error, the court of appeals affirmed the conviction.[57]

### 2.      Supreme Court of Ohio

Mitchell filed an appeal to the Supreme Court of Ohio.[58]  He asserted five of his original six assignments of error as propositions of law.[59]

> Proposition of Law 1:   Opinions of police witnesses of a defendant's credibility are improper, invade the province of the jury and the admission thereof constitutes reversible error.[60]

---

[55] *Id.* at 66-67.

[56] *Id.* at 67.  Assignment of Error 6.

[57] *Id.* at 69.

[58] *Id.* at 94.

[59] *Id.* at 111-13.

[60] *Id.* at 111.

-10-

Proposition of Law 2:  The subjective conclusions and opinions of a non-testifying pathologist included in an autopsy report constitute testimonial hearsay.[61]

Proposition of Law 3:  Any extraneous contact with a trial juror is presumptively prejudicial and requires a full and complete inquiry by the court in the presence of the Defendant before the presumption of prejudice can be overcome.[62]

Proposition of Law 4:  Before talesmen may be seated as trial jurors, the record must establish that they were fairly, uniformly, and impartially summoned.[63]

Proposition of Law 5:  The constitutional right to the effective assistance of counsel requires counsel whose performance was not seriously flawed and deficient.[64]

The State filed a memorandum in opposition to jurisdiction.[65]  The Supreme Court denied Mitchell leave to appeal, dismissing the case as not involving any substantial constitutional question.[66]

---

[61] *Id.*

[62] *Id.* at 112.

[63] *Id.* at 113.

[64] *Id.*

[65] *Id.* at 146.

[66] *Id.* at 162-63.

-11-

## C.    *Federal habeas claim*

Mitchell filed, through counsel, a petition for federal habeas relief on December 7, 2009.[67]  In his petition, Mitchell raises four claims for relief.[68]

> First claim for relief:  The trial court erred in admitting into evidence irrelevant and improper evidence prejudicial to the defendant/appellant in the form of opinion evidence as to the defendant/appellant's credibility and a photograph of the decedent's minor child.  This evidence had no evidentiary value unfairly prejudiced Mitchell.  The admission of the disputed evidence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[69]

> Second claim for relief:  The trial court failed to ensure that the petitioner's verdict was reached by a fair and impartial jury.  In the present case, the trial court's *ex parte*, perfunctory inquiry into possible jury contamination was insufficient to protect Mitchell's due process interests.  During a lunch break on the third day of trial, the prosecution informed the judge that a juror had approached A.J. Coffman's mother.  Mr. Coffman was a co-defendant.  This juror, Sandra Reynolds, purportedly made a remark that although she had not recognized the mother during jury selection, she now recognized her.  Juror Reynolds used to work with Ms. Coffman a couple of years before the trial.[70]

> Third claim for relief:  The trial judge allowed a coroner who had not conducted the autopsy or prepared the autopsy report to testify to the conclusions reached by a separate and distinct coroner's office.  The subjective conclusions and opinions of a non-testifying pathologist included in an autopsy report constitute testimonial hearsay and are in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[71]

---

[67] ECF # 1.

[68] *Id.* at 6-13.

[69] *Id.* at 24.

[70] *Id.* at 26.

[71] *Id.* at 29.

Fourth claim for relief:  Petitioner Mitchell's trial counsel rendered ineffective assistance at his trial so as to violate his rights under the Sixth and Fourteenth Amendments to the United States Constitution.[72]

In response to the petition, the State argues that Mitchell's first and second grounds are procedurally defaulted and that the remaining claims are without merit.[73]  The State submits that Mitchell's first ground had not been fairly presented to the state court, because he argued it in the state courts as error of state evidentiary law and not a federal constitutional violation.[74]  Mitchell's second claim was also argued as procedurally defaulted, because Mitchell did not object to the in-camera voir dire of juror Reynolds.[75]  As noted throughout the process of this case through state courts, Mitchell's claim that the autopsy report was improperly admitted as testimony by Dr. Graham as a violation of *Crawford v. Washington* is without merit.[76]  Additionally, Mitchell's claim of ineffective assistance of counsel was also ruled as without merit throughout the state process.[77]

---

[72] *Id.* at 31.

[73] *Id.* at 8-29.

[74] *Id.* at 11.

[75] *Id.* at 12.

[76] *Id.* at 21.

[77] *Id.* at 23.

-13-

A traverse was filed by Mitchell in September, 2010.[78]  In his traverse, Mitchell refuted respondent's claim that Mitchell's grounds were procedurally defaulted and without merit.[79]

Therefore, I find that the case is ready for resolution.

## Analysis

### A.    Preliminary issues

Prior to considering Mitchell's petition in detail I make the following preliminary observations:

1.    There is no dispute that Mitchell is currently in state custody as a result of his conviction by an Ohio court and was so incarcerated at the time he filed the present habeas petition.  Thus, Mitchell meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[80]

2.    There is also no dispute that by filing this petition on December 7, 2009, the petition was timely, in that it was filed within one year of the conclusion of Mitchell's state direct appeal on September 10, 2008, plus an additional ninety days for petitioning the United States Supreme Court for a writ of certiorari, regardless of whether such petition was actually filed.[81]

---

[78] ECF # 14.

[79] *Id.*

[80] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[81] 28 U.S.C. § 2244(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

-14-

3.      Moreover, as will be discussed in greater detail below, all grounds for relief asserted in this petition have been fairly presented to, and thus exhausted in Ohio courts as required by the federal habeas statute.[82]

4.      Finally, I note that Mitchell has requested an evidentiary hearing so as to establish prejudice allegedly resulting from ineffective assistance of trial counsel in not participating in the *voir dire* of a juror who had revealed prior contact with the mother a prosecution witness.[83] Because I will recommend that this ground for relief be found without merit, no basis exists for conducting an evidentiary hearing on this issue.[84]

**B.      Standards of review**

*1.      Exhaustion/fair presentment/de novo review*

In general, a claim is exhausted in state courts, as required, when the petitioner fairly presents that claim to the highest court of the state where petitioner was convicted, thereby giving that state a full and fair opportunity to rule on the claim before federal habeas relief is sought.[85]  Both the factual and legal basis for the claim must have been presented to the state court in order for the claim to be considered "fairly presented" for federal habeas

---

[82] 28 U.S.C. § 2254(b),(c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005).

[83] *See*, ECF # 1 at 33; ECF # 14 at 33.

[84] 28 U.S.C. § 2254(e)(2); *Reynolds v. Bagley*, 498 F.3d 549, 552 (6th Cir. 2007) (citation omitted).

[85] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

purposes.[86] As noted, in order for the claim to be exhausted, the petitioner must fairly present the claim through one full round of the state's established review procedures.[87]

The Sixth Circuit has identified four ways by which a petitioner may be found to have fairly presented a claim:

> (1) reliance on federal cases employing constitutional analysis; (2) reliance on state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.[88]

General allegations of the denial of rights to a "fair trial" or "due process" do not fairly present claims that a particular federal constitutional right was violated.[89] Rather, each claim must be itself fairly presented and not appear as mere "catchall language ... within the presentation of other non-constitutional arguments."[90]

In sum, a claim is deemed fairly presented if the same claim under the same theory is presented to the state courts as is presented to the federal habeas court.[91]

---

[86] *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

[87] *O'Sullivan*, 526 U.S. at 842.

[88] *McMeans v.Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

[89] *Fulcher*, 444 F.3d at 798.

[90] *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).

[91] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

-16-

2.     *Standard of review – fairly presented federal claims for relief not adjudicated by state court*

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms only to habeas claims that were "adjudicated on the merits in State court proceedings.[92]  When a federal habeas claim was fairly presented to but not adjudicated on the merits by the state courts, the federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact.[93]

3.     *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[94]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

---

[92] 28 U.S.C. § 2254 (d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[93] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio 2007).  In circumstances not applicable here, federal courts employ a modified version of AEDPA deference to the state court decision in cases where the state court did not squarely address the petitioner's claim as a federal Constitutional claim, but its analysis nevertheless bears "some similarity" to the requisite analysis set forth in clearly established federal law. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

[94] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)    Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[95]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established, and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[96]

If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation.[97]  In addition, procedural default may also be excused by a showing of actual innocence.[98]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[99]  Demonstrating "prejudice" requires the petitioner to show that the alleged

---

[95] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[96] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[97] *Deitz v.Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[98] *Id*.

[99] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[100]  There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[101]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[102]  In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[103]

### 4.     AEDPA

#### a.     The standards for federal habeas review

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[104]

---

[100] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[101] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[102] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[103] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[104] 28 U.S.C. § 2254(d).

-19-

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[105]  As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[106] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[107]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[108]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[109]

---

[105] *Williams v. Taylor*, 529 U.S. 362 (2000).

[106] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[107] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[108] *Williams*, 529 U.S. at 411.

[109] *Id.* at 409.

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[110]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[111]  Then, the federal court is to review the claim *de novo*.[112]

## 5.  *Ineffective assistance of counsel*

In *Higgins v. Renico*,[113] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[114]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[115]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

---

[110] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[111] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[112] *Id.*

[113] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[114] *Strickland v. Washington*, 466 U.S. 668 (1984).

[115] *Higgins*, 470 F.3d at 631.

When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

"Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options."  Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such strategic choices are virtually unchallengeable.  As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

-22-

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[116]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[117]

---

[116] *Id.* at 631-32 (internal citations omitted).

[117] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[118]

## C.    Application of standards

### 1.    Ground one – the claim of improper admission of evidence – should be dismissed as waived/procedurally defaulted.

Preliminarily, I note that ground one – a claim that the trial court improperly admitted opinion evidence and unfairly prejudicial evidence – contains two distinct sub-claims: (1) the trial court erred in admitting the testimony of police officers that Mitchell had not been truthful, and (2) it was improper to admit into evidence photographs of the victim's child.[119]  Both Mitchell and the State agree that the two elements of ground one were framed to the Ohio courts exclusively as a question of state evidentiary law without citing to any federal cases.[120]  Nevertheless, Mitchell argues here that he did fairly present his claim as to the alleged opinion evidence in the Ohio courts because he relied on the Ohio Supreme Court

---

[118] *Id.* at 631 n.3.

[119] ECF # 1 at 24.

[120] *See*, ECF # 9 (return of writ) at 11-12; ECF # 14 at 1.  Specifically, there are two related trial exhibits that are alleged to be prejudicial.  One is a photograph of the victim's tri-fold wallet, opened to show the inside flaps of the wallet and their content.  In two of the three inside flaps, the photograph of the open wallet revealed pictures of the victim's child – one picture of the child as an infant, and the other of the same child as a toddler.  *See*, ECF # 9, Attachment (state court record) at 25-26.  The prosecution also showed the jury an enlargement of just the two photographs of the child that were inside the wallet.  *See*, *id.* at 26.

-24-

case of *State v. Boston*,[121] which, he maintains, itself rested on federal constitutional analysis.[122]

Before examining whether the opinion evidence component of ground one was fairly presented, I observe that Mitchell in his traverse makes no argument that the claim concerning the admission of the photographs was fairly presented by means of a reference to a state case relying on federal constitutional analysis.  An examination of the relevant portions of Mitchell's brief on appeal[123] discloses that the alleged error in admitting the photographs was strictly presented as a violation of Ohio's evidence rules against admitting prejudicial evidence.  Moreover, a review of Mitchell's jurisdictional memorandum to the Ohio Supreme Court reveals that any argument as to the admission of the photographs was entirely dropped, such that ground one was only presented to the Ohio Supreme Court as a claim involving improper opinion testimony.[124]

Accordingly, inasmuch as Mitchell did not present the prejudicial evidence component of ground one through one full round of Ohio's established direct appeal, and now may not

---

[121] *State v. Boston*, 46 Ohio St. 3d 108, 545 N.E.2d 1220 (1989).  *Boston* is viewed in Ohio as being subsequently modified or overruled in part by *State v. Muttart*, 116 Ohio St. 3d 5, 875 N.E.2d 944 (2007).  Contrary to *Boston*, *Muttart* permits medical professionals to testify as to out-of-court statements made to them by children for purposes of diagnoses and treatment.  *See*, *State v. Britta*, 2010 WL 891357, at *6 (Ohio Ct. App. Mar. 12, 2010).  The ruling in *Muttart* does not concern that portion of *Boston* allegedly at issue here, which remains good law.

[122] ECF # 14 at 4-6.

[123] ECF # 9, Attachment at 26-27.

[124] *Id*. at 108.

-25-

return to Ohio courts to present this argument,[125] I recommend finding that this element of ground one has been waived or procedurally defaulted.

As to the aspect of ground one centered on the alleged improper admission of opinion testimony by police, I again note that this argument was presented to the Ohio Supreme Court[126] exclusively as a violation of state law, resting on two decisions of the Ohio Supreme Court – *State v. Boston*[127] and *State v. Eastham*.[128]  However, as also noted above, Mitchell now argues that, because the Ohio Supreme Court's ruling in *Boston* employed federal constitutional analysis, he should be found to have fairly presented the claim under the rubric for fair presentment outlined by the Sixth Circuit.[129]

In that regard, Mitchell's specific federal claim concerning the admission of opinion testimony from the police is that such testimony constituted improper vouching or bolstering by the prosecution in violation of the Fifth and Fourteenth Amendments, the admission of which, Mitchell argues, denied him a fundamentally fair trial.[130]  By contrast, the federal

---

[125] *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (quoting *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) ("Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, *res judicata* bars their litigation in subsequent state proceedings.").

[126] ECF # 9, Attachment at 108.

[127] *Boston*, 46 Ohio St. 3d 108, 545 N.E.2d 1220.

[128] *State v. Eastham*, 39 Ohio St.3d 307, 530 N.E.2d 409 (1988).

[129] ECF # 14 at 2-7.

[130] ECF # 1 (petition) at 24-25; ECF # 14 (traverse) at 14-15.

court decisions utilized by the Ohio Supreme Court in the *Boston* decision discuss how the hearsay rules and Sixth Amendment's right to confrontation are implicated in the particular context of a permitting testimony as to hearsay statements as to the perpetrator's identity made by a victim who does not testify in court, whether available to do so or not.[131]

Thus, while *Boston* also addresses the issue of an expert opining as to a victim's truthfulness (which Mitchell contends is at issue here), this section of *Boston* analyzing when an expert may offer an opinion as to a witness's veracity does not rest on any federal constitutional analysis. Rather the Ohio Supreme Court's analysis in *Boston* of when opinion evidence is proper where no hearsay question is present arises from the Court's application of the Ohio Rules of Evidence, not the Confrontation Clause of the United States Constitution.[132] In fact, as the appeals court in this case itself pointedly noted, the parameters for when opinion testimony may be given in the absence of hearsay concerns are spelled out in the Ohio Rules of Evidence and do not involve any Sixth Amendment confrontation clause

---

[131] *See*, *Boston*, 46 Ohio St. 3d at 121-22, 545 N.E.2d at 1233-34 (discussing cases from federal courts, courts of other states and Ohio courts considering when to admit hearsay statements made to a medical professional in the course of treatment); at 123, 545 N.E.2d at 1235 (extending discussion of federal and state cases analyzing admission of statements made during medical treatment that identify the perpetrator); at 125-28, 545 N.E.2d at 1237-40 (analyzing federal and state cases discussing the interplay of the hearsay rules and Confrontation Clause concerning admission of out-of-court statements when the child declarant is in court and available for cross-examination).

[132] *See*, *Boston*, 46 Ohio St. 3d at 118-20, 545 N.E.2d at 1231-33.

-27-

issues because the opinion does not relate to the truthfulness of an out of court statement made by a person who did not testify at trial.[133]

Accordingly, while Mitchell is correct as to the general rule that a claim may be fairly presented to state courts by means of citation to state court opinions that employ an analysis of federal constitutional principles and cases, I recommend finding that it is inapposite for him to conclude that he has fairly presented his claim that the opinion testimony here was impermissible voucher or bolstering evidence that violated the Fifth and Fourteenth Amendments.  As noted, the federal analysis in the state cases cited by Mitchell on appeal involved Sixth Amendment confrontation clause questions, not Fifth Amendment witness bolstering analysis.  As such, those cases did not fairly inform the Ohio courts that Mitchell was raising a federal constitutional issue as to the use of the alleged bolstering or vouching opinion testimony.[134]

Thus, for the foregoing reasons, I recommend finding that Mitchell did not fairly present this element of ground one to the Ohio courts and that the claim here should be

---

[133]  ECF # 9, Attachment (state appeals court decision) at 71- 72.

[134]  *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).  Where a habeas petitioner alleged a violation of the Confrontation Clause, he did not fairly present that claim in state court where the cases relied were mainly contained Ohio evidence law analysis. Court concluded that even though "isolated cases" contained "a few brief references" to the Confrontation Clause, that was not enough "to put the state courts on notice" that a Confrontation Clause claim had been asserted.  *See also*, *McCrimon v. Hudson*, 2009 WL 1707633, at * 5 (N.D. Ohio June 17, 2009) (Gwin, J.) (where petitioner did not characterize claim on state appeal as a federal constitutional claim, focused only on state law in his brief, and the appeals court understood the claim to be one of state law, the claim was not fairly presented).

dismissed as waived.[135]  Taken together with my previous recommendation concerning the other aspect of ground one, which was abandoned before the Ohio Supreme Court on direct appeal, I recommend that ground one be dismissed in its entirety.

2.     *Ground two – the claim of improper inquiry into bias of a juror – should be denied on the merits after de novo review.*

In the second ground for relief Mitchell argues that the trial court failed to ensure that the verdict in his case was reached by a fair and impartial jury when it did not conduct a hearing after discovering that a juror had approached a witness's mother to indicate that the juror recognized her from working with the woman in the past.[136]  Specifically, Mitchell contends that it was a violation of his Sixth Amendment right to a fair and impartial jury when the trial court did not order a hearing as set forth in *Remmer v. United States.*[137] The State, in turn, contends that this matter was waived because Mitchell's attorney did not make a contemporary objection to the trial court's decision to conduct an in-camera voir dire with the juror in question.[138]

---

[135] I note that, although Mitchell was aware that the State argued this claim was waived due to lack of fair presentment, he did not seek to present any evidence of cause or prejudice concerning the failure to fairly present, or of actual innocence. Because Mitchell was on notice that waiver was alleged (*see*, ECF # 9 at 11), his failure to present evidence to excuse that waiver now permits this Court to dismiss after finding that a waiver occurred. *See*, *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002), *amended on rehg*., 307 F.3d 459 (6th Cir. 2002) (dismissal for procedural default not favored without first giving petitioner notice and opportunity to respond).

[136] ECF # 1 at 26-29.

[137] *Remmer v. United States*, 347 U.S. 227 (1954).

[138] ECF # 9 at 12-18.

-29-

Preliminarily, I note, contrary to Mitchell's assertion, that a so-called *Remmer* hearing is not constitutionally required merely upon a suggestion of possible juror bias.  According to the Eastern District of Michigan in *Kowalak v. Scutt*, which sets out a review of the law concerning responses to potential juror bias, "a [*Remmer*] hearing is not required every time a mere possibility of juror bias is raised."[139] Rather, a court must hold such a hearing only after being presented by the defendant with "'a colorable claim of extraneous influence'" that is "'derived from specific knowledge about or a relationship with either the parties or their witnesses.'"[140]

As clearly stated by the district court in *Kowalak*, this rule means that "the presumed prejudice language of *Remmer* is no longer good law."[141] Thus, since the cornerstone of Mitchell's argument in this claim both here[142] and before the state courts[143] is that presumed prejudice from a juror's contact with a witness's relative constitutionally mandated a *Remmer* hearing, and since hearings founded on presumed prejudice are not constitutionally required,

---

[139] *Kowalak v. Scutt*, 712 F. Supp. 2d 657, 692 (E.D. Mich. 2010) (citing *United States v. Vining*, 224 F. App'x 487, 492 (6th Cir. 2007)).

[140] *Id.*

[141] *Id.*

[142] ECF # 1 at 28 ("The state trial court failed to hold a hearing pursuant to [*Remmer*]. The failure to hold such a hearing denied Mitchell the chance to prove actual bias in his case.").

[143] *See*, ECF # 9, Attachment at 29 (brief on appeal) (trial court's "perfunctory" inquiry failed to "overcome the presumption of prejudice that arises by virtue of *Remmer*").

I recommend finding as a preliminary matter that Mitchell's ground for relief in this claim is not supported in the law.[144]

That said, I recommend finding that the state appeals court did not address the federal law *Remmer* issue but, rather, found that Mitchell, through counsel, had waived, by inference, his right under the Ohio Constitution and Ohio Criminal Rule 43 to be present when the court communicates with a juror. Specifically, as the state appeals court noted: (1) defense counsel actually suggested that the court voir dire the juror; (2) in that regard, defense counsel did not seek to be present during the voir dire or seek to have the court voir dire the other party to the conversation; (3) defense counsel did not object to the results of the voir dire when they were announced in open court by the trial judge; and (4) defense counsel expressed no objection to the juror remaining on the panel.[145]

Accordingly, the appellate court concluded that Mitchell, by his counsel's actions cited above, had waived any right under Ohio law to be present during the judge's questioning of the juror.[146] The state court further found, under state law, that the trial court's inquiry in this case into potential bias was sufficient.[147]

---

[144] This finding will also be an element of the recommended analysis of Mitchell's ineffective assistance of counsel claim in the fourth ground for relief arising out of trial counsel's conduct concerning this incident.

[145] *See*, ECF # 9, Attachment at 78 (appeals court opinion).

[146] *Id.*

[147] *Id.*

-31-

As to the federal *Remmer* claim, as stated previously, the record indicates that the Ohio appeals court did not directly address this issue apparently because, as it noted, it was Mitchell's counsel who suggested that the trial court voir dire the individual juror, not conduct a hearing.[148]  While it might be argued that when defense counsel proposed the activity claimed erroneous on appeal it is functionally equivalent to counsel failing to make a contemporaneous objection to that activity, it is well-settled that finding procedural default based on a failure to object requires that the federal habeas court also find that the state court based its decision not to address the federal claim on the petitioner's failure to observe the state procedural rule.  Specifically, as the Sixth Circuit observed, "[i]f a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review."[149]

Here, even if it is assumed that Mitchell can be said to have failed to object to the absence of a *Remmer* hearing because his trial counsel proposed the alternative to such a hearing which the court adopted, it cannot be said that the Ohio appeals court relied on Mitchell's failure to make a contemporaneous objection to the voir dire as the reason it did not addressing the federal *Remmer* issue presented to it by Mitchell on direct appeal.  As noted, the appeals court did not concern itself with the *Remmer* issue,[150] and that court made

---

[148] *Id.*  "Counsel specifically suggested that the court voir dire the juror ...."

[149] *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

[150] Mitchell, too, noted that the state appeals court "did not specifically address the *Remmer* issue."  ECF # 14 at 16.

-32-

no attempt to explain its decision not to do so.  Thus, I recommend finding that no procedural default exists as to this claim.

As stated above, where a fairly presented federal claim is not addressed by the state court, the claim is adjudicated *de novo* by the federal habeas court.  In this instance, the claim that Mitchell should have received a *Remmer* hearing should be denied as without merit.  As has been more fully detailed previously, there is no federal constitutional right to a hearing on the basis of presumed prejudice from a juror contact as in this case.  A hearing can only be required where the defendant has presented the court with a colorable claim of bias arising from specific knowledge about or a relationship with a juror or witness.

In this case, no colorable claim of bias predicated on the past work relationship between the juror and the mother of a witness was ever advanced by Mitchell at any time[151] such as would trigger the right to a *Remmer* hearing.  In fact, the absence of any colorable claim of bias derived from specific knowledge is highlighted by Mitchell's claim here being based in part on the assertion that he had right to *Remmer* hearing based only on a mere presumption of prejudice; a position, as noted, that is contrary to law.

Accordingly, after *de novo* review I recommend that ground two be denied as without merit.

---

[151] Even on appeal with knowledge of the facts adduced in the voir dire, Mitchell's claim was that he was denied a procedural right to the hearing, not that there was actually any colorable claim of juror bias.

3.      *Ground three – the claim that testimonial hearsay was permitted when the coroner who did not prepare the autopsy  was permitted to testify as to the autopsy results – should be denied on the merits inasmuch as the state court decision denying this claim was not an unreasonable application of clearly established federal law.*

In his third ground for habeas relief, Mitchell contends that it was testimonial hearsay and a violation of *Crawford v. Washington*[152] for the trial court to allow a coroner who had not conducted the autopsy to testify as to the autopsy's conclusions.[153]  Mitchell specifically asserts that while objective scientific findings recorded in an autopsy report may be business records and so not testimonial hearsay, conclusions such as the cause of death are expert opinions and testimonial in nature.[154]  The State, citing the appeals court opinion, argues that the entirety of an autopsy report is a business record and, therefore, not testimonial in nature.[155]

The appeals court decision denying this claim[156] is based on *State v. Craig*,[157] an Ohio Supreme Court opinion construing *Crawford* in the context of an autopsy report.  In *State v. Craig*, the current county medical examiner was permitted to testify about an autopsy

---

[152] *Crawford v. Washington*, 541 U.S. 36.

[153] ECF # 1 at 30-31.

[154] *Id*; ECF # 14 at 28.

[155] ECF # 9 at 21.

[156] ECF # 9, Attachment at 83-87.

[157] *State v. Craig*, 110 Ohio St. 3d 306, 853 N.E.2d 621 (2006).

-34-

performed by the retired deputy coroner.[158]   After the defendant argued that his Sixth Amendment right to confrontation was violated, the *Craig* court analyzed whether such testimony was testimonial hearsay prohibited by *Crawford*.[159]   In that regard, the Ohio Supreme Court found, along with a majority of other jurisdictions to have addressed the question, that autopsy reports in their entirety, including both objective factual findings as well as opinions and conclusions, are non-testimonial business records such that the medical examiner's testimony did not violate *Crawford*.[160]

Here, Mitchell contends in light of *Melendez-Diaz v. Massachusetts*,[161] a recent United States Supreme Court case that found a *Crawford* violation in admitting drug test results accompanied only by the  sworn affidavit of the lab analyst, that *Craig* should no longer be viewed as properly applying *Crawford*.[162]   Thus, Mitchell argues, if the Ohio Supreme Court's decision in *Craig* is not good law, then the appeals court decision here that applied *Craig* as a basis for denying Mitchell's claim should be rejected as an unreasonable application of clearly established federal law.[163]

---

[158] *Id*. at 319, 853 N.E.2d at 637.

[159] *Id*. at 320-21, 853 N.E.2d at 638.

[160] *Id*. at 321-22, 853 N.E.2d at 639.

[161] *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009).

[162] ECF # 1 at 30-31.

[163] ECF # 14 at 28.

Mitchell essentially asserts that *Melendez-Diaz* announced a new rule of constitutional law that should be applied to his case. However, because *Melendez-Diaz* was decided in 2009, or after Mitchell's state appeal had ended in 2008, even if *Melendez-Diaz* did announce a new rule,[164] that rule would need to be retroactive in order to afford Mitchell a basis for habeas relief in this case. Specifically, it is well-settled that habeas "review is conducted in light of the law as it existed at the time of the final state court decision"[165] since under most circumstances newly promulgated rules do not apply retroactively to cases on collateral review.[166]

The United States Supreme Court has delineated the limited exceptions to the general rule precluding retroactive application of newly announced rules to cases pending on collateral review. As stated in *Teague v. Lane*, a new rule does not apply retroactively to cases on collateral review unless that rule breaks new ground or imposes new obligations on

---

[164] It is not clearly established that *Melendez-Diaz* did alter the teaching of the United States Supreme Court as to the testimonial nature of autopsy reports, since *Melendez-Diaz* courts have differed as to whether or how it actually applies to testimony concerning autopsies not conducted by the witness. *See*, *State v. Mitchell*, 4 A.3d 478, 489-90 (Me. 2010) (discussing various approaches taken by state supreme courts). Just a few months ago, in September, 2010, the Ohio Supreme Court asked for additional briefing as to whether the holding in *Melendez-Diaz* applies to testimony regarding autopsies. *Craig*, 126 Ohio St. 3d 1573, 853 N.E.2d 621.

[165] *Baze*, 371 F.3d at 318.

[166] *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005) (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

-36-

the government, or was not dictated by precedent existing at the time the defendant's conviction became final.[167]

In this case, Mitchell appears not to have recognized that, in order to benefit from *Melendez-Diaz*, he would first need to show that this decision was retroactive to his habeas case.  Accordingly, Mitchell presents no arguments as why, under the *Teague* framework, *Melendez-Diaz*, even if construed as stating a new rule, should be deemed retroactive. Similarly, the State has not asserted the non-retroactivity of *Melendez-Diaz*, even though it may be considered to have waived the argument if not raised.[168]  Nonetheless, it is clear that the federal habeas court may raise the issue of retroactivity under *Teague sua sponte*.[169]

Accordingly, in addressing whether *Melendez-Diaz* should be applied retroactively under the rubric set forth in *Teague*, I observe that this same issue has confronted several federal habeas courts in recent months.  In that regard, as the district court in the Northern District of Illinois very recently stated, "to date,  every court to consider whether *Melendez-Diaz* is retroactive has found that it is not."[170]

---

[167] *Teague*, 489 U.S. at 301.

[168] *See*, *Schiro v. Farley*, 510 U.S. 222, 229 (1994).

[169] *Lyons v. Stovall*, 188 F.3d 327, 336-37 (6th Cir. 1999) (citation omitted). "... a federal court's *sua sponte* application of *Teague* is discretionary; however, when raised by the state, a federal court's application of *Teague* is mandatory ...."

[170] *Espino-Rangel v. Hollingsworth*, No. CIV 10-674-GPM , 2010 WL 4483767, at *2 (S.D. Ill. Nov. 1, 2010) (collecting cases).

In particular, in reaching this conclusion, many courts use the reasoning in *Vega v. Walsh*,[171] wherein the court observed that since the Confrontation Clause is a procedural, not substantive, guarantee,[172] a new procedural rule will be applied retroactively only if it is "'a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'"[173]   As the Vega court noted, "in the twenty years since the Supreme Court established the *Teague* framework for determining the retroactivity of judge-made criminal rules, it has not found a single rule to satisfy the requirements for watershed status and thus retroactivity,"[174] including *Crawford*.[175]

Thus, I recommend adopting the analysis of *Vega* in finding that *Melendez-Diaz* should not be found retroactive under the *Teague* standard.  I make that recommendation acknowledging that no federal court has found *Melendez-Diaz* to be retroactive. Accordingly, I recommend finding that *Melendez-Diaz* – whether or not it states a new rule as to the testimonial nature of autopsy reports[176] – is not retroactive to Mitchell in this matter

---

[171] *Vega v. Walsh*, No. 06-CV-6492, 2010 WL 1685819 (E.D.N.Y April 22, 2010).

[172] *Id.*, at *10 (citing *Crawford*, 541 U.S. at 61).

[173] *Id.* (quoting *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)).

[174] *Id.* (citing *Whorton*, 549 U.S. at 418 (collecting cases)).

[175] *Whorton*, 519 U.S. at 418-19 (holding that, while *Crawford* did create a new procedural rule regarding testimonial hearsay, the rule was not a watershed rule and so not retroactive).

[176] Since deciding this issue is not required, I put forward no recommendation.

-38-

and so has no bearing on whether or not the state court's decision denying his claim was an unreasonable application of clearly established federal law.

That said, I note that Mitchell's only remaining basis for habeas relief as to this claim is to show that the state appeals court decision was an unreasonable application of *Crawford*, which was the clearly established federal law as to testimonial hearsay at the time of the Ohio appellate opinion.  In that regard, I observe, as did the appeals court here, that the Ohio Supreme Court decision in *Craig* adopted the majority view that autopsy reports are non-testimonial business records.  In that context, and without a directly contradictory opinion by the United States Supreme Court, I recommend finding that the state appeals court decision denying this claim was not an unreasonable application of the clearly established federal law of *Crawford*.  Thus, I recommend that this ground for relief here be denied.

### 4.    *Ground four – a claim of ineffective assistance of counsel – should be denied, since the decision of the state appeals court was not an unreasonable application of the clearly established federal law.*

Preliminarily, I note that this ground for relief has been imprecisely stated throughout the appeals process and in the habeas petition, leading to confusion in the record.  The original formulation of the claim as assignment of error six in Mitchell's direct appeal was:

> The defendant/appellant was deprived of his constitutional right to the effective assistance of counsel by counsel's failure to participate in the in-camera voir dire of juror Sandra Reynolds.[177]

---

[177] ECF # 9, Attachment at 38.

Notwithstanding this explicit basing of the claim on counsel's non-participation in the voir dire, Mitchell, through appellate counsel, then shifts the claim within the body of his argument to one claiming ineffective assistance for failure to object to opinion testimony by a police witness.[178]

In its decision, the state appeals court initially recognized that Mitchell "sets forth two different allegations of ineffective assistance of counsel."[179] The court then overruled each element of the claim by noting that it had already found no impropriety in either the opinion testimony or the manner by which the trial court resolved the issue of potential juror bias.[180] Without directly citing the ineffective assistance of counsel rubric promulgated in *Strickland*, the Ohio appeals court implicitly found that there could be no ineffective assistance where there was no prejudice to Mitchell.

In his federal habeas petition Mitchell again captions his claim for relief as one based on "failure of counsel to participate in the voir dire hearing."[181]  But as with the brief on appeal, Mitchell, through different counsel, after presenting the argument for ineffective assistance concerning the failure to participate in the voir dire hearing, again pivots away

---

[178] *Id.* at 39.

[179] *Id.* at 89.

[180] *Id.*

[181] ECF # 1 at 31.

from that stated basis for the claim to include the additional claim that counsel should have objected to the opinion testimony.[182]

The State, in its return, does not address the claim that counsel should have participated in the voir dire, but, instead, characterizes this ground for relief as one based solely on the lack of objection to the opinion testimony.[183]  Mitchell, in his traverse, does not address the State's arguments as to the opinion testimony, but focuses entirely on the contention that the ineffective assistance was in not participating in the juror voir dire.[184]

I spend this time on a preliminary matter simply to illustrate the extra burden placed on courts to properly and precisely recognize and adjudicate claims that were not distinctly and consistently presented in every forum.  Habeas actions were not intended to be legal versions of whack-a-mole, with claims popping up and disappearing.

That said, it appears that there are, as the state appeals court noted, two distinct claims for relief arising from the single allegation of ineffective assistance of counsel: (1) for failure to object to police opinion testimony, and (2) for failure to participate in the juror voir dire. It also appears that the state appeals court addressed both claims finding that, since no constitutional violation occurred in either instance, there could be no prejudice to Mitchell arising from his attorney's inaction.  I will consider each element separately.

---

[182] *Id* at 32.

[183] ECF # 9 at 23-28.

[184] ECF # 14 at 31-33.

-41-

a.      *Opinion testimony*

As noted earlier, I recommend finding that, because it was not fairly presented, Mitchell waived any federal claim in this matter that the opinion testimony at trial constituted a constitutional violation. As such, if this recommendation is adopted, there would be no finding that the opinion testimony here was constitutional error, and thus no basis for finding any prejudice to Mitchell arising from his counsel's failure to object to that testimony. Specifically, without any finding of any federal constitutional error in this regard, the only other finding, not at issue here, is that of the state court to the effect that this testimony was permissible under state law.

Under these circumstances, I recommend finding that this element of the ineffective assistance claim be denied, since the state appeals court finding that no prejudice resulted from trial counsel's failure to object to this testimony is not an unreasonable application of *Strickland*.

b.      *Failure to participate in voir dire*

As to this element of the ineffective assistance claim, I note, as stated earlier, that Mitchell made no showing of prejudice that would have entitled him to a *Remmer* hearing, and so provided a basis by which trial counsel might have objected to the manner by which the trial judge conducted a review of the juror contact. Specifically, I recommended finding, on the facts here, that Mitchell had no right to a *Remmer* hearing because that right is triggered by the defense presenting a "colorable claim" of bias "derived from specific

knowledge" – a situation that did not exist in this case.  Thus, without a right to a *Remmer* hearing, trial counsel cannot be ineffective for not seeking one.

That said, this element of the claim also states that the ineffectiveness inheres in counsel:  (1) permitting the juror to remain on the panel; (2) not participating in the voir dire; (3) not having Mitchell present for the voir dire.[185]  As the state appeals court noted in resolving this aspect of the claim, constitutionally-protected fairness is compromised by a defendant's absence from some aspect of his criminal trial if "a fair and just hearing was thwarted by [defendant's] absence, and to that extent only"[186]  Stated differently, "[t]he question is whether [the defendant's] presence has a 'reasonable substantial' relationship to 'the fullness of his opportunity to defend against the charge.'"[187]

In this case, the appeals court initially cited the correct principle of federal law from the holdings of the United States Supreme Court.  Then, in applying that holding, the court observed that Mitchell was informed prior to the fact that the voir dire would take place, and was further informed as to the results of that voir dire in open court. The court then concluded that counsel's failure to object to the proceedings as held had not been shown to constitute ineffective assistance.  The court stated that since the person whom the juror recognized was actually Mitchell's aunt, it was arguably good trial strategy to keep this juror

---

[185] ECF # 1 at 32.

[186] *Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934) (cited by Ohio appeals court in ECF # 9, Attachment at 78).

[187] *State v. Hale*, 119 Ohio St. 3d 118, 133, 892 N.E.2d 864, 890 (2008) (quoting *Snyder*, 291 U.S. at 105-06).

and accept the results of the court's voir dire, since presumably that juror had evidenced some positive connection to the defendant.[188] Further, the court also reasoned that it was also arguably good trial strategy not to insist that Mitchell be present during the voir dire since that might have been seen negatively by the juror.  As the court explained, Mitchell could then have been present for a potentially embarrassing interrogation of that juror.[189]

In his traverse, Mitchell does not directly mention or contest the reasoning of the state court regarding (1) the lack of proof of any actual juror prejudice, or (2) the grounds for seeing trial counsel's decision as strategic.  Rather, Mitchell focuses on the alleged need for a *Remmer* hearing as a means to now potentially establish prejudice required to find a *Strickland* violation.[190] Thus, he offers no reason to contradict the state court's conclusions as to trial strategy and, as noted earlier, relies on an incorrect reading of when a *Remmer* hearing is triggered.

Therefore, on this record, I recommend denying this claim because the state court's decision was not an unreasonable application of *Strickland* in finding a basis in trial strategy for the actions of counsel.  I further recommend denying this claim – and any evidentiary hearing – because a hearing under *Remmer* must be founded in a colorable claim of bias

---

[188] ECF # 9, Attachment at 78.

[189] *Id.* at 78-79.

[190] ECF # 14 at 35.  Because answering the prejudice prong of *Strickland* requires evidence that the trial's result was unreliable or fundamentally unfair, "the Court should require an evidentiary hearing or remand to the state court's [sic] for a Remmer Hearing [sic] ... to determine the prejudice."

grounded in specific knowledge, not because a party hopes such a hearing will establish the specific knowledge to support such a colorable claim.

## Conclusion

For the foregoing reasons, I recommend that Mitchell's petition for habeas relief be dismissed in part and denied in part.

Dated:   April 1, 2011                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[191]

---

[191] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).