UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
SHANE MITCHELL                              :
                                            :     CASE NO. 4:09-CV-2845
              Petitioner,                   :
                                            :
       v.                                   :     OPINION & ORDER
                                            :     [Resolving Doc. No. 1 ]
BENNIE KELLY, Warden,                       :
                                            :
              Respondent.                   :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Shane Mitchell moves under 28 U.S.C. § 2254 for a writ of habeas corpus. [Doc. 1.] With his petition, Mitchell seeks relief from his Ohio convictions for aggravated murder, aggravated robbery, and tampering with evidence. [Doc. 1.] Respondent-Warden Bennie Kelly opposes the petition. [Doc. 10.] On April 1, 2011, Magistrate Judge William H. Baughman filed a Report and Recommendation that recommended this Court deny Mitchell's petition. [Doc. 15.] Mitchell objects to two portions of the Magistrate Judge's Report and Recommendation. [Doc. 16.] For the following reasons, the Court **ADOPTS** the Magistrate Judge Baughman's Report and Recommendation and **DENIES** Mitchell's petition for a writ of habeas corpus.

**I. Background**

In December 2004, Shane Mitchell went to the Side Door Tavern in Salem, Ohio with the intent of stealing money by pretending to be an intermediary in a cocaine deal. Mitchell enlisted

Case No. 4:09-CV-2845
Gwin, J.

Richard Forrester to assist him in this scheme. During a conversation with a female potential purchaser, a third man, Bradley Van Horn, intervened. Van Horn then agreed to accompany Mitchell on a "drug run." Mitchell's cousin, A.J. Coffman, drove Van Horn, Mitchell and Forrester to a church. Coffman stayed in the car while the other three walked behind the church, where Mitchell and Forrester repeatedly punched and kicked Van Horn in the head and upper body, resulting in Van Horn's death. [Doc. 9-1 at 70-73.]

The next day, Mitchell voluntarily turned himself over to the police. In police interviews, Mitchell maintained that he never struck the victim and that his intention was only to trick the victim out of money. Mitchell blamed the assault entirely on Forrester, though he admitted to burning his bloodstained clothes after he learned of Van Horn's death. Mitchell claimed, however, that blood stains on his clothes resulted only from blood spraying when Forrester unexpectedly kicked Van Horn in the face. [Doc. 9-1 at 71-72.]

Mitchell was charged in Columbiana Municipal Court with murder, aggravated robbery, and tampering with evidence. [Doc. 9-1 at 4.] He pled not guilty on all counts, and the case proceeded to trial. [Id. at 5.]

During trial, Mitchell's cousin, A.J. Coffman and his father testified for the State. [Doc. 9-1 at 79.] Early in the trial, Coffman's attorney disclosed that a juror, Sandra Reynolds, had approached Coffman's mother to confirm that the two of them had worked together five years earlier. [Id.] The defense agreed to continue with the trial but suggested the court voir dire the juror. [Id. at 79-80.] The next day, the court questioned juror Reynolds during an *in camera* voir dire and determined that her brief acquaintance with Coffman's mother would not prohibit Reynolds from returning a fair verdict. [Id. at 80.] Although Mitchell's attorney did not participate in the examination of juror

Case No. 4:09-CV-2845
Gwin, J.

Reynolds, he did not object to the court's interview outside his presence or to the court's determination that the juror could be fair. [*Id.*]

Also during trial, Dr. William Graham, a coroner for Columbiana County, testified to Van Horn's cause of death. Dr. Graham also read excerpts from Van Horn's autopsy, though Graham had not performed or attended the autopsy himself. [Doc. 9-1 at 86.] Instead, Dr. Stan Seligman of the Cuyahoga County Coroner's office had performed the autopsy. [*Id.*] Dr. Seligman did not testify at the trial.

The jury found Mitchell guilty of all counts, and the court sentenced Mitchell to life imprisonment with no opportunity for parole for twenty-four years. [Doc. 9-1 at 5.]

On October 11, 2005, Mitchell timely appealed his conviction to the Court of Appeals for Columbiana County, Ohio, challenging, among other things: the trial court's admission of certain opinion evidence and photographs of the decedent's minor child, the court's inquiry into juror Reynolds's contact with Coffman's mother, the admission of the autopsy report through Dr. Graham's testimony, and the ineffective assistance of his counsel for failing to object to the trial court's *in camera* voir dire of juror Reynolds. [Doc. 9-1 at 8, 53-66.] On March 19, 2008, the court of appeals upheld Mitchell's conviction. [*Id.* at 70.] On April 29, 2008, Mitchell filed an appeal to the Supreme Court of Ohio. [*Id.* at 90.] The Ohio Supreme Court denied Mitchell leave to appeal. [*Id.* at 160.]

Mitchell filed a petition for federal habeas relief on December 7, 2009. [Doc. 1.] In his petition, Mitchell asserts four grounds for relief: (1) The trial court erred in admitting irrelevant and improper evidence prejudicial to Mitchell in the form of opinion evidence as to Mitchell's credibility and a photograph of the decedent's minor child; (2) the trial court failed to ensure that the verdict

Case No. 4:09-CV-2845
Gwin, J.

was reached by a fair and impartial jury by allowing a juror who had worked with Coffman's mother to serve on the jury; (3) the trial judge erred in allowing a coroner who had not conducted the autopsy or prepared the autopsy report to testify to the conclusions reached by a separate and distinct coroner's office; (4) Mitchell's trial counsel rendered ineffective assistance during the trial. [*Id.* at 5.]

Magistrate Judge Baughman recommended that the petition be denied. The Magistrate Judge found Mitchell's first ground for relief had been procedurally defaulted and found the second, third, and fourth grounds of Mitchell's petition without merit. [Doc. 15.]

## II. Legal Standard

*A. Procedural Bars to Review*

A habeas petitioner must overcome several procedural barriers before a federal court will review the merits of the petition. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

First, under 28 U.S.C. § 2244(d)(1), habeas petitions must be filed within one year from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

Second, a petitioner must exhaust his state remedies or have no remaining state remedies before a federal court will review a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)-(c). This requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 324 (6th Cir. 1987) (quoting *Picard v. Connor*, 404 U.S. 270 (1971)). Both the factual and legal basis for the claim must have been presented to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). Although a district court should not grant relief on unexhausted claims, *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), where relief no

Case No. 4:09-CV-2845
Gwin, J.

longer exists in state court, a court may not dismiss the petition for failure to exhaust state avenues. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Finally, absent either cause and prejudice or a finding of actual innocence, a federal court may not reach the merits of claims that have been procedurally defaulted. *Reed v. Farley,* 512 U.S. 339, 354-55 (1994); *William v. Anderson,* 460 F.3d 789, 805-06 (6th Cir. 2006). A claim may be procedurally defaulted in two ways. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). The petitioner could fail to comply with state procedural rules in presenting his claim to the appropriate state court, *id.*, precluding the state court from reaching the merits of the issue because the state procedural rule is an independent ground for precluding relief, *Maupin v. Smith,* 785 F. 2d 135, 138 (6th Cir. 1986). Alternatively, a petitioner could fail to raise and pursue a claim through the state's "established appellate review process," *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999), and state law may preclude the petitioner from then raising the claim at the time of the federal habeas petition, *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982).

The Sixth Circuit uses a three-step analysis to determine whether a claim is procedurally defaulted.[1] *Maupin, 785 F.2d at 138-39*. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review. *Id.* However, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Id.*

---

[1] Courts often refer to the *Maupin* test as a four-step analysis. However, the oft-repeated fourth step—a determination of whether cause and prejudice will excuse a procedural default—is not a necessary inquiry to determine whether a claim was procedurally defaulted. Rather, that step is relevant only after a procedural default is found.

Case No. 4:09-CV-2845
Gwin, J.

### B. Substantive Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-123, 110 Stat. 1214 (1996), controls a federal court's review of the merits of a state prisoner's habeas corpus petition. AEDPA limits federal review to only those claims in which a petitioner contends that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's legal decision is 'contrary to' clearly established federal law under § 2254(d)(1) 'if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts.' An 'unreasonable application' occurs when 'the state court identified the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' Under this standard, a state court decision is not unreasonable simply because the federal court concludes that the state decision is erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law." *Lorraine v. Coyle*, 291 F.3d 416, 421-22 (6th Cir. 2002) (quotations omitted).

Case No. 4:09-CV-2845
Gwin, J.

The Supreme Court recently elaborated on the objectively unreasonable standard in *Harrington v. Richter*, 131 S.Ct. 770 (2011). The Court specified that habeas relief is limited to "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id.* at 786. The court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.*

Where a state court does not adjudicate a fairly presented federal claim on the merits, "the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Federal courts instead review questions of law and mixed questions of law and fact *de novo*. *Id.*

### III. Analysis

Mitchell's petition presents four grounds for relief. [Doc. 1.] However, Mitchell does not object to the Magistrate Judge's recommendation that the first ground—a claim of improper admission of evidence—was procedurally defaulted and that the fourth ground—a claim of ineffective assistance of counsel—should be denied on the merits. [Doc. 15.] Neither party objects to the Magistrate Judge's recommendation that this Court find Mitchell's third and fourth grounds for relief are not procedurally barred. [Doc. 15.]

The Federal Magistrates Act requires a district court to conduct *de novo* review only of those portions of a Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C). Absent objection, a district court may adopt the report and recommendation without review. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985). Accordingly, this court reviews *de novo* only those portions to which Mitchell objects. Moreover, having conducted its own review of the record

Case No. 4:09-CV-2845
Gwin, J.

and the parties' briefs, the Court agrees with the conclusions in the portions of Magistrate Judge Baughman's Report and Recommendation that are without objection.

The Court thus proceeds to the merits of Mitchell's second and third grounds for relief.

*A Ground Two – Improper inquiry into juror bias*

Mitchell claims he was denied the right to have his case decided by a fair and impartial jury under the Sixth Amendment when the state trial court did not conduct a hearing upon discovering that juror Reynolds had prior contact with witness Coffman's mother. [Doc. 1 at 26-29.]

The Supreme Court has held, in *Remmer v. United States*, 347 U.S. 227 (1974), that, to protect a criminal defendant's Sixth Amendment right to an impartial jury, "when possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the constitutional guarantee." *United States v. Perry*, 438 F.3d 642, 651 (6th Cir. 2006) (quoting *United States v. Davis*, 177 F.3d 552, 556 (6th Cir. 1999)). In *Remmer*, the Supreme Court outlined the procedure that courts should follow when advised of unauthorized contact with a juror: "The trial court should not decide and take final action *ex parte* . . . but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 229–30.

The Ohio appeals court did not directly address this Sixth Amendment claim. [Doc. 15 at 32.] Instead, the state appeals court stated that when Mitchell proposed a voir dire, he waived his right under the Ohio Constitution to "be present at all critical stages of the trial." [Doc 9-1 at 81.] This determination is separate from the federal issue of whether a *Remmer* hearing was required under the Sixth Amendment; as a result, this Court reviews Mitchell's second ground for relief *de novo*.

-8-

Case No. 4:09-CV-2845
Gwin, J.

See Cristini v. Mckee, 526 F.3d 888, 898 (6th Cir. 2008) ("When a habeas claim is not adjudicated in state court, we apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact.").

Under the Due Process Clause of the United States Constitution, a criminal defendant has the right to be tried by a fair and impartial jury. U.S. Const. amend.VI. The right to due process, however, does not necessarily require a new trial in every instance of potential juror bias. Smith v. Phillips, 455 U.S. 209, 217 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id. (citing Remmer v. United States, 347 U.S. 227 (1954)). The Sixth Circuit has held that when a habeas court addresses a claim of juror misconduct, it must consider four points: (1) when a defendant alleges unauthorized conduct with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such contact; (3) the petitioner bears the burden of proving actual juror bias; and (4) juror testimony at a *Remmer* hearing is not inherently suspect. Zuern v. Tate, 336 F.3d 478, 486 (6th Cir. 2003) (quoting United States v. Rugiero, 20 F.3d 1387, 1390 (6th Cir.1994)).

Furthermore, "[f]or the district court to conduct a *Remmer* hearing, 'a defendant must do more than simply raise the possibility of bias.'" United States v. Vining, 224 Fed. App'x 487, 492 (6th Cir. 2007) (quoting United States v. Herndon, 156 F.3d 629, 635 (6th Cir. 1998)). A defendant must raise a "colorable claim of extraneous influence" that is "derived from specific knowledge about or a relationship with either the parties or their witnesses." Id.

Here, Mitchell failed to move for a *Remmer* hearing or advance any colorable claim of bias based on Reynolds's past work relationship with Coffman's mother, instead proposing that the trial

-9-

Case No. 4:09-CV-2845
Gwin, J.

judge conduct a voir dire. After the voir dire, Mitchell did not object to the results of the voir dire as announced by the trial judge in open court, or to Reynolds remaining on the jury. Mitchell therefore waived any objection with respect to a *Remmer* hearing. See *Vining,* 224 Fed. App'x at 493-94; *United States v. Walker*, 160 F.3d 1078, 1083-84 (6th Cir. 1998) (affirming conviction where defendant did not request *Remmer* hearing). "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990).

In some circumstances and with serious claims of jury misconduct, a court may be required to conduct a *Remmer* hearing *sua sponte*. See *U.S. v. Corrado* 227 F.3d 528, 536 (2000) (requiring a court to conduct a hearing *sua sponte* where an individual approached the defendant saying that a "friend" on the jury would vote not guilty in exchange for money (citing *United States v. Davis,* 177 F.3d 552, 556-57 (6th Cir. 1999) (holding that the emergence of a credible claim of extraneous influence on a jury imposed a duty on the district court to conduct a *Remmer* hearing despite the fact that the defendants had not expressly requested such a hearing))). However, these circumstances are "unusual," and courts are reluctant to impose this burden. *Corrado,* 227 F.3d at 536. Here, that a juror worked with a witness's mother five years prior to the trial is not one of these "unusual" circumstances, especially where the juror brought the issue to the court's attention herself and stated that she would still be able to be impartial. The trial court was thus not required to conduct a *Remmer* hearing, and Mitchell's second ground for relief is denied.

### B. Ground Three – Admission of Autopsy and Accompanying Testimony

Additionally, Mitchell argues that admission of Van Horn's autopsy and the accompanying testimony by Dr. William Graham violated his Sixth Amendment right to confront witnesses against

-10-

Case No. 4:09-CV-2845
Gwin, J.

him as established under *Crawford v. Washington*, 541 U.S. 36 (2004). [Doc. 1 at 26.] In *Crawford*, the Supreme Court held that, under the Confrontation Clause of the Sixth Amendment, testimonial statements made out of court cannot be admitted unless the witness is available for cross-examination. 541 U.S. at 50-51.  Later, in *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009), the Court clarified *Crawford* to include that laboratory reports prepared for trial are testimonial and that admission of such reports into evidence without the testimony of the lab analyst presents a Confrontation Clause violation.

Mitchell says that the trial court unreasonably refused to extend *Crawford* to include autopsy reports. [Doc. 1 at 26; Doc. 16 at 8.] In particular, Mitchell argues that the report in question, "authored by an agent of the prosecution, fell squarely with the core class of statements covered by *Crawford*," and thus should have been excluded under *Crawford*, as a violation of the Confrontation Clause. [Doc. 1 at 29.]

Accordingly, the Court must determine whether the state court's decision to admit the autopsy was an "unreasonable application" of *Crawford*.  This is a difficult standard to meet, as a state court's erroneous or incorrect application of federal law is not considered to be objectively unreasonable.  See *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (describing the unreasonable requirement as a "substantially higher threshold").  Indeed, a state court's ruling will be upheld where "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786.  Nonetheless, a state court's application of federal law may be held unreasonable is if it refuses to extend "existing Supreme Court precedent to new factual situations where it should apply."  *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

Case No. 4:09-CV-2845
Gwin, J.

In assessing the reasonableness of the state court's refusal to extend *Crawford* to autopsy reports, the Court must consider the state of the law at the time of Mitchell's trial. In *Crawford*, the Supreme Court completely reformulated the standard for determining when the admission of hearsay statements in criminal cases is permitted under the Confrontation Clause of the Sixth Amendment. In *Crawford*, the Court held that cross-examination is required to admit prior testimonial statements of witnesses that have since become unavailable. For over twenty years prior to that decision, the controlling standard for admitting unavailable witness's statements was set forth in Ohio v. Roberts, 448 U.S. 56 (1980). Under *Roberts*, if a witness is unavailable, that witness's testimony could be admitted through a third person if it bears "adequate indicia of reliability." *Id.* at 66. This was true if the statement fell within a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness." *Id.* at 66. According to Justice Kennedy's dissent in *Melendez-Diaz*, state and federal courts applied the *Roberts* framework to consistently reject the notion that a lab analyst's testimony was necessary for lab results to be admissible. *Melendez-Diaz*, 129 S.Ct. at 2543, 2553-68 (Kennedy, J., dissenting).

Although written in broad terms, the Supreme Court originally crafted the *Crawford* rule narrowly, defining testimonial statements as "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. The Supreme Court's decision in *Crawford* did not explicitly repudiate decisions that failed to find a Confrontation Clause violation when laboratory results were admitted without the analyst's testimony.

Moreover, despite clarification in *Melendez-Diaz* that laboratory reports prepared for trial are testimonial, lower courts subsequent to *Crawford* (but prior to *Melendez-Diaz*) were left to determine whether *Crawford*'s prohibition on testimonial statements applied to medical and scientific

-12-

Case No. 4:09-CV-2845
Gwin, J.

laboratory reports. The Supreme Court characterized *Melendez-Diaz*'s holding as "little more than the application of our holding in *Crawford*,"[2] but the extent to which *Crawford* applied to forensic laboratory reports created great confusion among lower federal and state courts and remained an unresolved issue until *Melendez-Diaz*. Indeed, the courts that addressed this question generally found that the *Crawford* rule did not apply to these laboratory reports. For example, in *State v. Craig*, the Supreme Court of Ohio addressed the gap left open by *Crawford*, holding that autopsy reports are non-testimonial. *State v. Craig*, 853 N.E.2d 621, 639 (Ohio 2006). The state supreme court found that the autopsy reports are business records, which are treated as non-testimonial business records under *Crawford*. *Id.* (citing *Crawford*, 541 U.S. at 56). The court concluded that the introduction of autopsy reports without the testimony of the analyst who conducted the report did not raise a Confrontation Clause violation. *Craig*, 853 N.E.2d at 639.

Several courts addressing the issue also held that *Crawford* was not violated by the admission of various kinds of laboratory reports where the technician who prepared the report was not available for cross-examination. *See, e.g.*, *United States v. Ellis*, 460 F.3d 920 (7th Cir. 2006) (records establishing presence of methamphetamine in defendant's system were non-testimonial business records); *People v. Geier*, 161 P.3d 104, 133-40 (Cal. 2007) (holding that a DNA report was not testimonial under *Crawford*); *Commonwealth v. Vasquez*, 923 N.E.2d 524, 532 & n.11 (Mass. 2010) (collecting cases showing "the unsettled nature of confrontation clause jurisprudence in *Crawford's* wake"); *State v. Forte*, 629 S.E.2d 137, 143-44 (N.C. 2006) (holding that serology reports are not

---

[2] Mitchell does not argue that *Melendez-Diaz* establishes a new rule of law that should be applied retroactively to his habeas claim. And, even if it could be so characterized, *Melendez-Diaz* does not establish a new "watershed" procedural rule implicating "the fundamental fairness and accuracy of the criminal proceeding" so as to warrant retroactive application. *Teague v. Lane*, 489 U.S. 288, 301 (1989) (a new procedural rule is applied retroactively only if it is a "watershed" procedural rule). As a case applying, or extending, *Crawford* to circumstances of laboratory reports prepared for trial, *Melendez-Diaz* cannot be characterized as a "watershed" procedural rule.

Case No. 4:09-CV-2845
Gwin, J.

testimonial); *State v. Dedman*, 102 P.3d 628, 634-39 (N.M. 2004) (holding that the results of blood alcohol tests are not testimonial in light of *Crawford* and are admissible as public records); *People v. Brown,* 801 N.Y.S.2d 709, 709-13 (N.Y. Sup. Ct. 2005) (holding that the records of DNA tests are not testimonial). *But see State v. March*, 216 S.W.3d 663, 664-65 (Mo. 2007) (finding that laboratory report prepared solely for prosecution to prove an element of the crime charged is testimonial).

Although *Melendez-Diaz* later noted that cases relying on *Ohio v. Roberts* were inconsistent with *Crawford*, *Melendez-Diaz,* 129 S.Ct. at 2533, the above-cited cases nevertheless reflect the state of the law at the time of Mitchell's trial. At the time of Mitchell's trial, it was unclear how far the new *Crawford* rule reached. Taken together, these cases suggest that the rule that autopsy reports are testimonial under *Crawford* was hardly "clearly established federal law" for the state court in Mitchell's case to contravene, as is required to grant habeas relief under 28 U.S.C. § 2254(d)(1). Generally speaking, it is difficult to hold a state court decision unreasonable for refusing to extend existing Supreme Court precedent when that precedent does not speak directly to the issue. Moreover, here, to have found the autopsy report inadmissible in Mitchell's case, the state court would have needed to resolve an ambiguous Supreme Court precedent in a manner that contradicted not only the precedent of the Supreme Court of Ohio but also mainstream interpretation of *Crawford*.

Accordingly, the Court finds that the state court did not unreasonably refuse to extend *Crawford* to exclude the autopsy report admitted in Mitchell's trial. Not only had courts prior to *Crawford* refused to find Confrontation Clause violations in similar scenarios, but the rule announced in *Crawford* was itself vague and invited legitimate disagreement over its reach. *See, e.g.*, *Vega v. Walsh*, 2010 WL 2265043, at *3-4 (E.D.N.Y., May 28, 2010) (denying habeas relief

-14-

Case No. 4:09-CV-2845
Gwin, J.

and collecting cases showing that "the number of courts that found laboratory reports and similar forensic analysis to be non-testimonial following *Crawford* suggests that reasonable jurists differed on the application of *Crawford* to the evidence at issue in *Melendez-Diaz*").[3/]

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Mitchell's petition for a writ of habeas corpus. However, given that this petition raises a previously unresolved issue of constitutional law, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision with regard to Mitchell's third ground for relief would be taken in good faith. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). On Mitchell's other grounds for relief, an appeal could not be taken in good faith and a certificate of appeal does not issue.

IT IS SO ORDERED.


Dated: June 29, 2011                      s/    *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[3/]The result of the foregoing is similar to an ineffective assistance of counsel claim raised before the Southern District of Ohio in *Smith v. Warden, Lebanon Correctional Institution*. 2010 WL 3075276 (S.D. Ohio, Aug. 4, 2010). The court refused to hold that the petitioner's lawyer rendered ineffective assistance of counsel by failing to raise a Confrontation Clause claim, prior to the decision in *Melendez-Diaz*, but after *Crawford*, when the trial court admitted a lab report analyzing a controlled substance without the testimony of the report's analyst. The court found that it was not objectively unreasonable for the petitioner's counsel to fail to raise such a claim, as to do so would require the attorney to predict the future development of the law.